CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

SEP 1 6 2021

JULIA C. DUDLEY, CLERK
BY: /s/ A. Single
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| THERESA W., | ) |
| | ) |
| Plaintiff | ) Civil Action No. 7:20-CV-241 |
| | ) |
| v. | ) |
| | ) |
| KILOLO KIJAKAZI, Acting Commissioner | ) |
| Social Security, | ) By: Michael F. Urbanski |
| | ) Chief United States District Judge |
| | ) |
| Defendant | ) |

**MEMORANDUM OPINION**

This social security disability appeal was referred to the Honorable Robert S. Ballou, United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(B), for proposed findings of fact and a recommended disposition. The magistrate judge filed a report and recommendation ("R&R") on July 29, 2021, recommending that plaintiff's motion for summary judgment be denied, the Commissioner's motion for summary judgment be granted, and the Commissioner's final decision be affirmed. Plaintiff Theresa W. (Theresa) has filed objections to the R&R and this matter is now ripe for the court's consideration.

**I. Background**

Theresa filed an application for disability insurance benefits on November 9, 2016, alleging disability beginning on March 1, 2016. Theresa was 54 years old at the alleged onset date. Based on her earnings record, Theresa had enough quarters of coverage to remain insured through June 30, 2017, making that her "date last insured" (DLI). R. 72.

Theresa claims disability based on arthritis, osteopenia, eczema, acid reflux, high blood pressure, depression, and anxiety. The ALJ found that Theresa had the following severe impairments: obesity, degenerative disc disease, osteopenia, bilateral patella femoral syndrome, mild compression fractures of the cervical and thoracic spine, kyphosis of the thoracic spine, chronic pain syndrome, and mild degenerative joint disease of the knees, but that none of her impairments met or medically equaled a listed impairment. The ALJ next found that Theresa had non-severe impairments of eczema, thyroid nodule, gastroesophageal reflux disease, pulmonary emphysema, sinusitis, tremor, hypertension, hyperlipidemia, cataracts, hyperopia, astigmatism, presbyopia, depression, and anxiety. The ALJ further found that Theresa had the residual functional capacity (RFC) to perform light work except that she could only occasionally climb, stoop, and crawl, and frequently balance, kneel, or crouch. A vocational expert testified that Theresa's previous work as a pharmacy technician was light and that it qualified as substantial gainful activity. The ALJ concluded that Theresa could return to her work as a pharmacy technician and therefore was not disabled. R. 71-81. The Appeals Council denied Theresa's request for review, R. 1-5, making the ALJ decision the final decision of the Commissioner.

This lawsuit followed. The magistrate judge found that the ALJ determination was supported by substantial evidence and Theresa has objected to several of the magistrate judge's findings.

## II. Standard of Review of Magistrate Judge Decision

The objection requirement set forth in Rule 72(b) of the Federal Rules of Civil Procedure[1] is designed to "train[ ] the attention of both the district court and the court of appeals upon only those issues that remain in dispute after the magistrate judge has made findings and recommendations." United States v. Midgette, 478 F.3d 616, 621 (4th Cir. 2007) (citing Thomas v. Arn, 474 U.S. 140, 147–48 (1985)). An objecting party must do so "with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." Id. at 622.

> To conclude otherwise would defeat the purpose of requiring objections. We would be permitting a party to appeal any issue that was before the magistrate judge, regardless of the nature and scope of objections made to the magistrate judge's report. Either the district court would then have to review every issue in the magistrate judge's proposed findings and recommendations or courts of appeals would be required to review issues that the district court never considered. In either case, judicial resources would be wasted and the district court's effectiveness based on help from magistrate judges would be undermined.

Id.

The district court must determine de novo any portion of the magistrate judge's report and recommendation to which a proper objection has been made. "The district court may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1).

---

[1] "Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b).

If, however, a party "'makes general or conclusory objections that do not direct the court to a specific error in the magistrate judge's proposed findings and recommendations,'" de novo review is not required. Diprospero v. Colvin, No. 5:13-cv-00088-FDW-DSC, 2014 WL 1669806, at *1 (W.D.N.C. 2014) (quoting Howard Yellow Cabs, Inc. v. United States, 987 F. Supp. 469, 474 (W.D.N.C. 1997) and Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982)). "The district court is required to review de novo only those portions of the report to which specific objections have been made." Roach v. Gates, 417 F. App'x 313, 314 (4th Cir. 2011). See also Camper v. Comm'r of Soc. Sec., No. 4:08cv69, 2009 WL 9044111, at *2 (E.D. Va. 2009), aff'd, 373 F. App'x 346 (4th Cir.) ("The court will not consider those objections by the plaintiff that are merely conclusory or attempt to object to the entirety of the Report, without focusing the court's attention on specific errors therein."); Midgette, 478 F.3d at 621 ("Section 636(b)(1) does not countenance a form of generalized objection to cover all issues addressed by the magistrate judge; it contemplates that a party's objection to a magistrate judge's report be specific and particularized, as the statute directs the district court to review only 'those portions of the report or specified proposed findings or recommendations to which objection is made.'") (emphasis in original). Such general objections "have the same effect as a failure to object, or as a waiver of such objection." Moon v. BWX Technologies, 742 F. Supp. 2d 827, 829 (W.D. Va. 2010), aff'd, 498 F. App'x 268 (4th Cir. 2012). See also Arn, 474 U.S. at 154 ("[T]he statute does not require the judge to review an issue de novo if no objections are filed. . . .")

Rehashing arguments raised before the magistrate judge does not comply with the requirement set forth in the Federal Rules of Civil Procedure to file specific objections. Indeed,

4

objections that simply reiterate arguments raised before the magistrate judge are considered to be general objections to the entirety of the report and recommendation. See Veney v. Astrue, 539 F. Supp. 2d 841, 844-45 (W.D. Va. 2008). As the court noted in Veney:

> Allowing a litigant to obtain de novo review of her entire case by merely reformatting an earlier brief as an objection "mak[es] the initial reference to the magistrate useless. The functions of the district court are effectively duplicated as both the magistrate and the district court perform identical tasks. This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act." Howard [v. Sec'y of Health & Human Servs.], 932 F.2d [505,] [] 509 [(6th Cir. 1991)].

Veney, 539 F. Supp. 2d at 846. A plaintiff who reiterates her previously raised arguments will not be given "the second bite at the apple she seeks;" instead, her re-filed brief will be treated as a general objection, which has the same effect as would a failure to object. Id.

### III. Judicial Review of Social Security Determinations

It is not the province of a federal court to make administrative disability decisions. Rather, judicial review of disability cases is limited to determining whether substantial evidence supports the Commissioner's conclusion that the plaintiff failed to meet his burden of proving disability. See Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). In so doing, the court may neither undertake a de novo review of the Commissioner's decision nor re-weigh the evidence of record. Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992). Evidence is substantial when, considering the record as a whole, it might be deemed adequate to support a conclusion by a reasonable mind, Richardson v. Perales, 402 U.S. 389, 401 (1971), or when it would be sufficient to refuse a directed verdict in a jury trial. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996).

Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less than a preponderance. Perales, 402 U.S. at 401; Laws, 368 F.2d at 642. "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Biestek v. Berryhill, 139 S.Ct. 1148, 1154 (2019) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); Perales, 402 U.S. at 401.

## IV. Plaintiff's Objections[2]

Theresa objects to the following findings of the magistrate judge: (1) The ALJ gave proper weight to the opinion of Theresa's treating physician; (2) the ALJ's residual functional capacity (RFC) assessment is supported by substantial evidence; and (3) the ALJ properly considered Theresa's subjective allegations.

### A. Opinion of the Treating Physician

Theresa saw neurologist Ahmet Z. Burakgazi, M.D., on July 26, 2017, a month after her DLI. She was referred to him for an examination based on shakiness, tremors, numbness, and tingling of her hands and arms. R. 889. She reported that was taking Lyrica and Cymbalta for fibromyalgia but had stopped the Lyrica because she thought it caused her tremors. After stopping it, her tremors subsided but the numbness and pain in her arms and hands had gotten worse. Id. On exam, she was in no acute distress. She had normal muscle strength in her upper and lower extremities. She had decreased sensation to light touch, pin prick, vibration, and

---

[2] Detailed facts about Theresa's impairments and medical and procedural history can be found in the report and recommendation (ECF No. 22) and in the administrative transcript (ECF No. 11) and will not be repeated here except as necessary to address her objections.

6

proprioception in her hands and feet. Her deep tendon reflexes were normal, as were her coordination and gait. R. 892-93. Dr. Burakgazi recommended a nerve conduction study. R. 893.

On October 1, 2017, Dr. Burakgazi completed a Medical Source Statement-Physical for Theresa. He diagnosed her with shakiness, tremors, numbness and tingling of hand and arms, balance problems, and occasional falls. He said her pain was "8/10" in her legs and arms, and that standing, walking, and using her arms made the pain worse. He noted decreased sensation in her hands and feet. He stated that she should use a cane when engaging in occasional standing and walking and that she could stand or sit no more than two hours per day. He opined that she needed a job where she could shift position at will between standing, sitting, and walking. He stated that she could lift less than ten pounds frequently, ten pounds occasionally, twenty pounds rarely, and never lift fifty pounds. He further stated that she could only rarely twist, stoop, crouch, squat, or climb ladders or stairs. He found no significant limitations in her ability to handle or finger. He also assessed her as having depression. R. 899-900.

Dr. Burakgazi found Theresa's physical impairments to be reasonably consistent with the symptoms and functional limitations described in the evaluation and said that her pain and other symptoms would frequently interfere with the attention and concentration needed to perform even simple work tasks. He said she would be incapable of performing even low-stress jobs and she was likely to be absent from work more than four days per month because of her impairments or treatment for her impairments. He said he was "unclear, uncertain" about the earliest date the limitations and symptoms he described had appeared. R. 900.

7

In general, an ALJ must accord more weight to the medical opinion of an examining source than to that of a nonexamining source. Testamark v. Berryhill, 736 F. App'x. 395, 387 (4th Cir. 2018) (citing 20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1) and Brown v. Comm'r of Soc. Sec. Admin., 873 F.3d 251, 268 (4th Cir. 2017)). Treating sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of the claimant's medical impairments. Id. (citing Woods v. Berryhill, 888 F.3d 686, 695 (2018)). "[T]he ALJ is required to give controlling weight to opinions proffered by a claimant's treating physician so long as the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the claimant's case record." Lewis v. Berryhill, 858 F.3d 858, 867 (4th Cir. 2017) (alterations and internal quotations omitted).[3] If an ALJ does not give controlling weight to the opinion of a treating source, the ALJ must consider a non-exclusive list of factors to determine the weight to be given all the medical opinions of record, including (1) examining relationship; (2) treatment relationship; (3) supportability of the source's opinion; (4) consistency of the opinion with the record; and (5) specialization of the source. Testamark, 736 F. App'x at 398; 20 C.F.R. § 404.1527(c). "An ALJ must include 'a narrative discussion describing how the evidence supports' his 'explanation of the varying degrees of weight he gave to differing opinions concerning [the claimant's] conditions and limitations.'" Woods, 888 F.3d at 695 (citing Monroe v. Colvin, 826 F.3d 176, 190 (4th Cir. 2018)). An ALJ may give greater weight to the

---

[3] The Social Security Administration has amended the treating source rule effective March 27, 2017, for claims filed after that date. Under the new rule, the SSA will consider the persuasiveness of all medical opinions and evaluate them primarily on the basis of supportability and consistency. 20 C.F.R. § 404.1520c(a), (c)(1)-(2). Because Theresa's claim was filed before the effective date of the change, the decision is reviewed under the regulation in effect at that time, 20 C.F.R. § 404.1527.

8

opinions of nontreating and nonexamining sources if the decision provides "sufficient indicia of supportability in the form of a high-quality explanation for the opinion and a significant amount of substantiating evidence, particularly medical signs and laboratory findings; consistency between the opinion and the record as a whole; and specialization in the subject matter in the opinion." Id.

The ALJ in Theresa's case gave little weight to Dr. Burakgazi's assessment. She noted that Dr. Burakgazi did not see Theresa until a month after her DLI and he did not have an opinion as to the earliest date the limitations applied.[4] The ALJ found that Dr. Burakgazi's opinion was not consistent with his examination notes which showed that other than decreased sensation in Theresa's hands and feet, Theresa's examination was normal. She further found examinations by other caregivers during the period were normal, except for a painful range of motion in the neck, slightly decreased range of motion in the lumbar spine, decreased range of motion in the left knee, and bilateral quadriceps weakness. R. 80. Thus, she found his opinion also was inconsistent with that of other providers.

The magistrate judge found that the ALJ provided sufficient analysis of her reasons for giving Dr. Burakgazi's opinion little weight, because she considered the treating relationship, his specialization, the entire medical record, and Theresa's testimony. He further found that Theresa's argument that the ALJ did not point to any other persuasive contradictory evidence

---

[4] The court saw one other reference to Dr. Burakgazi in the record where he was described as Theresa's physician on May 21, 2015 and performed testing for the decreased sensation on the left lateral side of her thigh. R. 402. However, it is unclear whether he examined her at that time or whether he saw her between that date and October 1, 2016.

9

in support of her decision to give Dr. Burakgazi's opinion little weight amounted to a disagreement with ALJ's findings and a request to the court to reweigh the evidence.

Theresa objects that she was not asking the court to reweigh the evidence and that in her memorandum she provided detailed arguments in support of her contention that the ALJ improperly considered Dr. Burakgazi's opinion. However, to the extent she is asking the court to review and consider the arguments she made to the magistrate judge, her objection is improper. See Fed. R. Civ. P. 72(b) ("a party may serve and file specific, written objections to the proposed findings and recommendations); see also Veney, 539 F.Supp.2d at 845 (finding that allowing a litigant to obtain de novo review by reformatting an earlier brief as an objection wastes judicial resources). Similarly, Theresa's objection that the magistrate judge erred in concluding that the ALJ provided sufficient analysis of the § 416.927(c)(2) factors is insufficient because she does not identify the factors the ALJ failed to consider or explain their significance.

The only specific objection Theresa makes with regard to the weight the ALJ gave Dr. Burakgazi's opinion is that the magistrate judge failed to recognize that the state agency opinions, to which the ALJ gave great weight, did not address the time period between December 31, 2016 and June 30, 2017, Theresa's DLI. However, this argument appears to go the weight given the state agency opinions rather than the weight given to Dr. Burakgazi's opinion. In any event, Theresa did not point to any evidence in the record that the state agency consultants failed to consider or otherwise explain why it was error to accord the opinions great weight.

10

The court finds that the magistrate judge did not err in concluding that the ALJ sufficiently stated her reasons for giving little weight to Dr. Burakgazi's opinion. Theresa's objection to this conclusion is **OVERRULED**.

### B. RFC Assessment

The ALJ found that Theresa could do light work with additional limitations of only occasionally climbing, stooping, and crawling, and frequently balancing, kneeling, or crouching. Theresa makes several arguments in support of her objection that the RFC assessment was not supported by substantial evidence.

#### (1) Eczema as a Severe Impairment

Theresa argues that the ALJ erred when she found Theresa's eczema to be non-severe. At Step 2 of the evaluation process, the ALJ must determine whether the claimant has a medically determinable impairment that is "severe," or a combination of impairments that is "severe." An impairment is "not severe" if it does not significantly limit a claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1522(a), 416.922(a). See also SSR 85-28 ("[A]n impairment(s) that is "not severe" must be a slight abnormality (or a combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities.")

Basic work activities include the following:

(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;

(2) Capacities for seeing, hearing, and speaking;

(3) Understanding, carrying out, and remembering simple instructions;

(4) Use of judgment;

(5) Responding appropriately to supervision, co-workers and usual work situations; and

(6) Dealing with changes in a routine work setting.

20 C.F.R. §§ 404.1522(b), 416.922(a). If an ailment is controlled by medication or treatment such that it does not cause work-related limitations, it is not considered severe. Gross v. Heckler, 785 F.2d 1163, 1165-66 (4th Cir. 1986). Medically determinable impairments that are not severe under the regulations are taken into account when a claimant's RFC is assessed. 20 C.F.R. § 404.1545(a)(2).

The ALJ summarized the medical records pertaining to Theresa's eczema. She had coin-like patches of eczema on her hands and feet and was given medication. In August 2016 she had cracked skin on her hands and feet but was in no distress. In January 2017 she complained of a sore left foot with more dryness and cracking. In May 2017 she complained that her feet were sore. The ALJ concluded that while Theresa had consistent treatment for eczema with hand and foot soreness, the record did not support a finding that the skin condition caused more than minimal vocationally relevant limitations. R. 74.

The magistrate judge found that at Step 2 of the evaluation, the ALJ provided a thorough and detailed summary of Theresa's treatment records that led her to conclude that the eczema was a non-severe impairment. The magistrate judge further found that at Step 4 of the evaluation, although the ALJ did not reference the eczema, she continued to consider the resulting functional limitations, specifically considering her ability to walk and her examinations demonstrating a normal, stable gait without an assistive device. In addition, the ALJ summarized Theresa's testimony regarding foot pain and that her impairments limit the

12

use of her hands. Finally, the ALJ noted that the state agency physicians assessed Theresa's eczema as a severe impairment, but also concluded that she could operate hand or foot controls and could stand and walk approximately six hours per day. Thus, the magistrate judge concluded that the ALJ's determination that Theresa's eczema is not a severe impairment is supported by substantial evidence.

Theresa objects that there is no indication that the ALJ considered the functional limitations of the eczema at Step 4 of the analysis. An ALJ must consider the limiting effects of all impairments, including those that are non-severe, when making the RFC determination, 20 C.F.R. § 404.1545(a)(2) and (e), and Theresa is correct that the ALJ did not refer to her eczema when making her RFC assessment. However, when determining whether the eczema was severe, the ALJ acknowledged that Theresa said her feet and hands were sore but found that she maintained the ability to walk unassisted and use her hands with noted limitations. Therefore, even if the ALJ had referred to the eczema in her RFC assessment, without a finding that the eczema limited her in any way, inclusion of the condition would not have changed the RFC assessment.

Theresa further objects that the ALJ did not properly explain why she did not adopt the finding of the state agency physicians that the eczema was a severe impairment. Both state agency consultants found that the eczema was a severe impairment, but both also found that Theresa could stand or walk for six hours in an eight-hour workday and had no manipulative limitations. R. 132, 135, 144, 148. An ALJ is not required to adopt wholesale every portion of a physician opinion given great weight. Torres v. Saul, No. 2:19-cv-2000, 2020 WL 6264985 at *11 (D.S.C. July 22, 2020). See also Moore v. Saul, 822 F. App'x 183, 186 (4th Cir. 2020)

13

(per curiam), abrogated on other grounds by Arakas v. Comm'r Soc. Sec. Admin., 983 F.3d 83 (4th Cir. 2020) ("[I]t is unreasonable to expect that the ALJ will recite every recommendation in every opinion and provide different reasoning for accepting or rejecting each portion.") Importantly, however, even if the ALJ had adopted wholesale the opinions of the state agency consultants regarding the severity of Theresa's eczema, it would not have changed her RFC assessment because the ALJ assessment mirrored those of the consultants. R. 134-135, 147-148.

**(2) Failure to Discuss Evidence**

Theresa argued to the magistrate judge that the ALJ did not discuss evidence in the record related to her back impairment. The magistrate judge agreed that the ALJ did not mention a record from May 11, 2015 where the doctor noted that she had numbness in her left thigh and left hand, R. 408; the results of a nerve conduction study performed by Dr. Burakgazi which noted no evidence of radiculopathy but did show left paresthetica meralgia,[5] R. 402; the results of a CT myelogram that showed degenerative disc disease at L4-L5 with disc herniation along with facet/ligamentum hypertrophy causing moderate central and lateral recess stenosis at L4-L5, R. 580; or the results of an MRI showing old degenerative disc disease with left sided disc herniation impinging on traversing left L5 in lateral recess. Id.

---

[5] Meralgia paresthetica is a condition characterized by tingling, numbness and burning pain in the outer thigh. The cause of meralgia paresthetica is compression of the nerve that supplies sensation to the skin surface of the thigh. Tight clothing, obesity or weight gain, and pregnancy are common causes of meralgia paresthetica. However, it can also be caused by local trauma or disease, such as diabetes. In most cases, meralgia paresthetica can be relieved with conservative measures, such as wearing looser clothing. In severe cases, treatment may include medications to relieve discomfort, or rarely, surgery. https://www.mayoclinic.org/diseases-conditions/meralgia-paresthetica/symptoms-causes/syc-20355635 (last viewed Sept. 10, 2021).

However, a review of the record shows that the ALJ cited to the results of the CT myelogram and the MRI when she was discussing whether any of Theresa's impairments met or equaled a listing. See R. 77 (citing to 4F p. 20). In addition, the ALJ cited to Dr. Burakgazi's report where he described the results of the nerve conduction study which showed sensory neuropathy in lower limbs with the left greater than the right. R. 80, 889. In any event, even if the ALJ did not cite directly to the nerve conduction study that revealed left meralgia paresthetica, Theresa does not explain how the failure to address the evidence affected the ALJ's opinion. Nothing in the record indicates that the meralgia paresthetica limited Theresa's ability to do light work beyond the limitations imposed by the ALJ.

Theresa is correct that the ALJ did not cite to the record from the doctor who noted that she had numbness in her left thigh and left hand. However, the finding of numbness prompted the doctor to request the EMG, which, as discussed above, revealed meralgia paresthetica. R. 408.[6] Theresa has failed to explain how the fact that the ALJ did not cite to the doctor's treatment note affected the RFC assessment. Without doing so, she cannot show that the ALJ opinion is not supported by substantial evidence.

### (3) Use of a Cane

The ALJ acknowledged that Theresa testified that she used a cane on occasion, R. 80, but that she could nevertheless do light work, which can require a good deal of walking or standing. 20 C.F.R. § 404.1567. Theresa testified that she uses a cane "[s]ometimes weekly, sometimes monthly." R. 108. She said the cane was not prescribed by a doctor but belonged

---

[6] John C. Fraser, M.D., ordered the EMG and a myelogram on May 15, 2015. R. 408. The EMG was performed by Dr. Burakgazi on May 21, 2015, R. 402, and reviewed by a nurse practitioner on June 17, 2015. R. 391-396. The myelogram was performed on July 2, 2015, R. 580, and reviewed by Dr. Fraser on July 13, 2015. R. 385.

to her mother and she started using it when she needed to do so. Id. The ALJ observed that Theresa's exams showed a normal, stable gait without an assistive device and that there was no mention of a cane during the relevant period. R. 80. The magistrate judge found that the ALJ adequately supported her finding that Theresa could do light work and that the finding was further supported by the state agency doctors who opined that her exams were largely normal and did not show that she needed to use a cane. R. 134, 146.

Theresa objects that the ALJ finding that there was no mention of use of a cane in the record is error because Dr. Burakgazi stated that she occasionally needs a cane when standing or walking. R. 898. Plaintiff is correct that Dr. Burakgazi made that finding in his assessment. However, as explained above, the ALJ gave Dr. Burakgazi's opinion little weight because his opinion was inconsistent with his examination notes which showed a normal examination except for decreased sensation in Theresa's hands and feet and that examinations by other caregivers during the period were normal, except for a painful range of motion in the neck, slightly decreased range of motion in the lumbar spine, decreased range of motion in the left knee, and bilateral quadriceps weakness. R. 80. Dr. Burakgazi assessed Theresa as having normal strength and reflexes in her lower limbs with decreased sensation in her feet. R. 892. He observed no ataxia and she had a normal gait with normal tandem walking. R. 893. Therefore, even though he stated in his assessment that she would occasionally need a cane, that opinion is not supported by his examination findings. Accordingly, the ALJ's failure to mention Dr. Burakgazi's comment about the cane does not mean that her determination that Theresa can do light work is not supported by substantial evidence.

### (4) Ability to Sustain Work

Theresa argued to the magistrate judge that the ALJ failed to make specific findings regarding whether her impairments would cause her to be unable to work an eight-hour day or would cause her to have an unacceptable number of absences from work. The magistrate judge pointed out that the ALJ found that Theresa had no limitation in her ability to concentrate, persist, and maintain pace and that while Theresa testified that she has constant pain, she did not testify that she would have difficulty sustaining work or otherwise describe difficulty sustaining work. The magistrate judge further noted that Theresa pointed to no objective evidence to support her allegations that she cannot work an eight-hour day or will have excessive absenteeism because of her impairments.

Theresa objects, arguing that the ALJ failed to make specific findings about how often she would experience her symptoms during work, citing in support Monroe, 826 F.3d at 189. In Monroe, the ALJ acknowledged that the claimant suffered from sleep apnea and narcolepsy, and the claimant testified that he would lose consciousness two or three times per day and would need to take breaks because of fatigue. Id. at 188. However, the ALJ did not make specific findings about whether the claimant's sleep apnea and narcolepsy would cause him to experience loss of consciousness at work or fatigue such that he would need breaks. Id. The court remanded that case with instructions that the ALJ consider the narcolepsy and apnea along with the claimant's other impairments and determine on a function-by-function basis how they affected his ability to work. Id.

In her objections, Theresa does not describe which symptoms she believes will keep her from working a full eight-hour day or will cause excessive absenteeism. At the hearing

17

Theresa testified that she could not stand for more than a few minutes and that she was in constant pain, which she described as a "five" on a scale of one to ten. R. 100-101. She said that outbreaks of eczema would last from one to two weeks every month and would make walking so painful that she would cry. R. 101. She also testified that she could sit for fifteen to thirty minutes or stand for fifteen minutes before being in pain. R. 103-104. She testified that she occasionally uses a cane for balance. R. 108. She testified that she has problems using her hands because of the eczema. R. 109-110.

The ALJ discussed the evidence showing that Theresa has eczema and degenerative disc disease. R. 74, 79. As discussed above, the ALJ did not find the eczema to be a serious impairment because her providers noted her to be in no acute distress and because she maintained the ability to walk and use her hands with noted limitations. R. 74. Regarding her back, at an orthopedic evaluation performed on December 29, 2016, Theresa was able to walk freely without an assistive device and had a stable gait. She had a painful but full range of motion in her neck, full strength in her extremities, intact sensation, normal reflexes, a negative straight leg raise, and no atrophy. R. 79. The orthopedist told her that her disability paperwork would not be completed because the exam did not support a finding of disability. R. 79. The next month Theresa returned to the orthopedist's office complaining of bilateral knee pain and feeling that her right knee buckled. Examination showed decreased range of motion in her left knee, bilateral quadriceps weakness, and atrophy. Id. She was shown strengthening exercises and advised to continue to gradually increase her activity. Id.

The ALJ concluded that while Theresa received treatment for pain, her examinations were within normal limits for the most part. The ALJ also gave great weight to the opinions

18

of the state agency physicians who found Theresa could do light work with additional limitations. R. 80.

The court finds that this explanation by the ALJ is sufficient. Unlike in Monroe, the ALJ did not ignore the effects of any of Theresa impairments. Rather, she assessed the impairments and explained why she did not find Theresa's description of her limitations consistent with objective evidence in the record. Theresa, who bears the burden of proof at Step 4 of the sequential evaluation, points to nothing in the record to substantiate her claims that she cannot sustain work over the course of an eight-hour day or that she will experience successive absenteeism.

For the above reasons, the court finds that the ALJ's assessment of Theresa's RFC is supported by substantial evidence. Her objection to the magistrate judge's conclusion on this issue is **OVERRULED**.

### C. Subjective Allegations

The magistrate judge found that the ALJ properly assessed Theresa's subjective allegations and found that they were not consistent with the objective evidence in the record. The ALJ discussed Theresa's medical history along with her allegations and noted that at several examinations between August 2016 and May 2017 she had normal physical findings except for some pain and tenderness. Conservative treatment, including physical therapy and medication were routinely recommended. The ALJ discussed the evidence that supported Theresa's subjective complaints, such as Dr. Burakgazi's report, but discounted it for the reasons discussed above. The ALJ also cited to the opinions of the state agency physicians

19

who found that Theresa could do light work with additional limitations in support of her decision that Theresa's subjective allegations were not fully supported by the record.

Theresa broadly objects to the magistrate judge's conclusion and refers the court to the memorandum she filed in support of her motion for summary judgment. As explained previously, Federal Rule of Civil Procedure Rule 72(b)(2) requires that a party objecting to an R&R must file specific written objections. Theresa has not done so here and without specific objections, the court will not conduct a de novo review of the ALJ's decision regarding Theresa's subjective complaints. See Roach, 417 F. App'x at 314 ("The district court is required to review de novo only those portions of the report to which specific objections have been made."); Orpiano, 687 F.2d at 47 (noting that courts have held that de novo review is unnecessary "when a party makes general and conclusory objections that do not direct the court so a specific error in the magistrate's proposed findings and recommendations.") Accordingly, Theresa's objection on this issue is **OVERRULED**.

### V. Conclusion

For the reasons stated, the court finds no error in the magistrate judge's conclusion that the ALJ decision is supported by substantial evidence. As such, the magistrate judge's report and recommendation will be adopted in its entirety.

An appropriate Order will be entered.

It is so **ORDERED**.

Entered: 09/16/2021

Michael F. Urbanski
Chief United States District Judge